IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

TYRONE A. MCDONALD,       )
                                )
        Petitioner,       )
                                )
   v.                  )      CV 117-167
                                )    (Formerly CR 114-068)
UNITED STATES OF AMERICA,   )
                                )
        Respondent.     )

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at the Federal Correctional Institution in Edgefield, South Carolina, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Pretrial Proceedings

In an indictment returned on June 4, 2014, a grand jury in the Southern District of Georgia charged Petitioner with one count of possession with intent to distribute schedule I and II controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1), and 18 U.S.C. § 2, one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), and one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). United States v. McDonald, CR 114-068, doc. no. 1

(S.D. Ga. June 4, 2014) (hereinafter "CR 114-068"). Petitioner retained attorney Peter D. Johnson to represent him. Id., doc. nos. 9, 10. After the Court ruled on the government's unopposed motion for reciprocal discovery, the case proceeded to trial. Id., doc. nos. 22, 23.

Prior to trial, the parties filed a stipulation that Petitioner was a convicted felon as charged in the indictment. Id., doc. no. 27. The Court also held a pretrial conference on February 4, 2015. Id., doc. nos. 31, 60 (Pretrial Tr.). Mr. Johnson objected to evidence of McDonald's earlier drug convictions under Fed. R. Evid. 404(b), and Chief United States District Judge J. Randal Hall overruled the objection preliminarily and stated he would make a final ruling at trial. Pretrial Tr. at 4-12.

## B. Trial

### 1. Opening Statements

After Judge Hall's preliminary instructions, Assistant United States Attorney Nancy Greenwood gave the opening statement for the government. Id., doc. no. 56 (Trial Tr.), p. 62. Ms. Greenwood outlined the government's evidence and reviewed the charges against Petitioner, including a description of the elements the government carried the burden of proving. Id. 62-65, 67-68. Finally, she reviewed the fingerprint evidence the government would present. Id. at 69. Mr. Johnson explained primarily in his opening Petitioner's contention the government's case was merely "four fingerprints" on two pickle jars and a telescopic gun lenses, and the government could not prove from that evidence Petitioner possessed drugs, sold drugs, or possessed the gun. Id.

### 2. The Government's Evidence

The government offered the following evidence at trial. On November 25, 2013, officers from the Richmond County Sheriff's Office ("RCSO") convened at 2454 Belgrade

Court, Augusta, Georgia, in an attempt to locate two individuals with outstanding felony warrants. Id. at 72-73, 125-26. Narcotics Investigator Patrick Kaney and members of the RCSO crime suppression team positioned themselves in a drainage culvert in an overgrown wooded area behind 2454 Belgrade Court in order to intercept anyone who might run from the residence when officers pulled to the front. Id. at 72, 74.

As RSCO officers arrived in front of 2454 Belgrade Court, seven or eight individuals ran from the officers, with three running through a gap in the privacy fence behind the house and into the wooded area where Inv. Kaney and his colleagues were located. Id. at 75, 79, 126, 128-29. Officers identified one of the runners as Petitioner, who lived at 2458 Belgrade Court, two houses down from 2454 Belgrade Court, and Sgt. Jason Vinson testified during trial he personally observed Petitioner as one of the runners. Id. at 75-77, 126-27, 151-52. Sgt. Vinson further testified that after he was apprehended, Petitioner said, "I give up. Man, I'm done." Id. at 152.

After RSCO officers apprehended the runners, Deputy Harrison, an experienced narcotic K-9 handler, used a K-9, or trained drug dog, to conduct an open air search of the wooded area behind 2458 Belgrade Court to see if any contraband was in the area. Id. at 80, 98, 108-09, 116-17, 130. Sega, the certified K-9, was trained to detect marijuana, cocaine, methamphetamine, and heroin. Id. at 109-10.

Sega first alerted on a Mt. Olive glass pickle jar sitting in plain view containing two vacuum-sealed bags containing marijuana. Id. at 81-82, 131, 154. Sega also alerted on an unloaded Bushmaster AR-15 assault rifle located nearby on the ground under a portion of a red plastic bag. Id. at 83-84, 104, 132, 155. Deputy Harrison concluded Sega alerted to the firearm because it contained the residual odor of narcotics, likely from being handled by

someone who had also handled drugs.  Id. at 121.  Sega further alerted on a closed box buried in the ground which contained an "Eaton's" pickle jar with a yellow lid and a glass mason jar with a silver lid.  Id. at 84-85, 133, 135, 155.   Enclosed within the Eaton's pickle jar were three baggies containing methamphetamine and cocaine and a digital scale.  Id. at 85-88.  Inv. Kaney found another digital scale and a baggie containing marijuana inside the mason jar.  Id. at 88-90, 92.

Inv. Kaney and Sgt. Vinson each explained digital scales are used to weigh illegal narcotics for distribution purposes.  Id. at 88, 135.  Sgt. Vinson further testified firearms are typically used in the drug trade to protect the drugs and the money made from selling drugs because, even if unloaded, they can be intimidating as well as easy to load.  Id. at 133-34. He further explained the Bushmaster found during the search could easily be loaded within seconds with a magazine.  Id. at 134.

Sgt. Vinson testified he previously investigated Petitioner in 2001 based on information he was selling marijuana from his residence on Belgrade Court.  Id. at 145-46. In 2001, Petitioner threw out marijuana while fleeing from officers and concealed approximately 162 grams of marijuana in an abandoned car two doors down at 2454 Belgrade Court.  Id. at 146-47.  Petitioner pled guilty to possessing marijuana with intent to distribute in Richmond County in April 2002.  Id. at 147-48.  McDonald was also charged with cocaine possession with intent to distribute in 1999, and later pled guilty to cocaine possession.  Id. at 148-49.  In 2005, Petitioner also pled guilty to marijuana possession.  Id. at 149.  Following Sgt. Vinson's testimony regarding the convictions, Chief Judge Hall gave a cautionary instruction to the jury limiting use of that evidence.  Id. at 149-50.

Inv. Kaney, who is certified to field-test marijuana, confirmed the substance was in fact marijuana. Id. at 92-94. In total, the officers recovered a net weight of 224.3 grams of marijuana: 111.6 grams from one of the vacuum-sealed bags, 110.6 grams from the other vacuum-sealed bag, and 2.1 grams from the baggie removed from the mason jar. Id. at 94. Scott Goodlin, a qualified forensic chemist for the Drug Enforcement Administration, tested the other substances and confirmed they were methamphetamine and cocaine, with a net weight of 13.8 grams of methamphetamine and 0.37 grams of cocaine. Id. at 156-65.

Sgt. Vinson estimated the half ounce of methamphetamine had a street value of approximately $400 to $450 and the cocaine a street value of $50 to $70. Id. at 135-37. Sgt. Vinson identified the marijuana as high quality with a very strong smell, allowing users to use less per dose, and conservatively estimated the value of the recovered marijuana to be $1,500. Id. at 138-39. He further recognized the vacuum-sealed bags as commonly used to conceal the marijuana's smell, and the smaller baggies as commonly used to keep out the weather. Id. at 139-40.

The day after officers located the items, Inv. Kaney provided them to Sgt. Jim Gordon, a qualified fingerprint analyst with RCSO. Id. at 99, 106, 172-74. When testifying, Sgt Gordon explained his investigative process and how he lifts fingerprints from evidence. Id. at 174-81. He further explained how he applied that process to Petitioner's case. Id. at 181-99. Sgt. Gordon identified the following prints on the following items: (1) two prints of Petitioner's left middle finger on the sight lens of the Bushmaster firearm; (2) one print of Petitioner's left thumb on the mason jar; (3) one print of Petitioner's left thumb on the Eaton's pickle jar; and (4) one print that could not be excluded as being Petitioner's on one of the vacuum-sealed bags recovered from the Mt. Olive pickle jar. Id. at 199-201. Sgt.

Gordon found no one else's fingerprints on the recovered items. Id. at 202. Sgt. Gordon's work was peer-reviewed by Sgt. Fanning, a qualified fingerprint examiner, who confirmed Petitioner's fingerprints were on the mason jar, the small pickle jar, and the firearm sight. Id. at 215-24.

Special Agent Ronald Rhodes of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, a qualified firearms expert, also testified. Id. at 236-43. He identified the recovered firearm as a Bushmaster rifle manufactured in West Jordan, Utah, shipped to Maine, and sold in Georgia. Id. at 240-41. Accordingly, Special Agent Rhodes concluded the firearm had moved in interstate commerce. Id. at 241.

### 3. Petitioner's Evidence

Through cross-examination, Mr. Johnson challenged the fingerprint evidence by suggesting (1) there is no set standard for determining if a partial fingerprint matches a known fingerprint; and (2) Sgts. Gordon and Fanning were merely conducting a "side-by-side eyeball comparison" without applying an objective standard. Id. at 204-09, 211-12, 224-28. Mr. Johnson also challenged via cross-examination the reasons the police were in Petitioner's neighborhood and the account of his attempted escape. Id. at 100-03, 151-53. Furthermore, Mr. Johnson challenged admission of Petitioner's prior drug charges under Fed. R. Evid. 404(b), but was overruled by Chief Judge Hall. Id. at 144, 146-48.

Petitioner did not testify on his own behalf. However, Cordell Nero, Petitioner's neighbor, testified for the defense. Id. at 249. Mr. Nero testified he and others collected pickle jars for "wildlife activity," and he left them in his open yard, where everyone in the neighborhood has access to them. Id. at 250-51, 253.

### 4.     Closing Arguments

Ms. Greenwood argued the fingerprint evidence proved Petitioner actually possessed the drugs when he held the pickle jars. Id. at 260. Ms. Greenwood further argued based on location of the jars and value of the drugs, they were not just left out in the wooded area but rather placed there intentionally by Petitioner. Id. at 261-63. Finally, she argued Petitioner possessed the Bushmaster rifle in furtherance of a drug crime based on the fingerprint evidence, location, and drug dog alert. Id. at 264-66.

Mr. Johnson argued the government had not shown Petitioner "packaged, stored, put, [or] hid the drugs" or possessed the firearm, and, absent such a showing, the government was asking the jury to "assume, speculate, guess from the fingerprints" without being shown "how, when, why the prints might have been placed there." Id. at 268-69. Mr. Johnson further argued the firearm and drugs were not Petitioner's but rather belonged to someone else who abandoned them in the woods and fled when the police arrived. Id. at 269. He also argued the expert opinion evidence regarding fingerprints was inconclusive, and at most indicated Petitioner might have touched the jars and gun at some point. Id. at 270-71. Mr. Johnson concluded that with so many questions unanswered by the government's evidence, the jury was "travelling in the territory that's called reasonable doubt," and it should "return a verdict of not guilty." (Id. at 271.)

### 5.     Verdict

After deliberations, the jury convicted Petitioner on all counts. CR 114-068, doc. no. 39.

### C. Sentencing

The United States Probation Office prepared the Presentence Investigation Report (PSI), which provided for a Total Offense level of twenty-four and a Criminal History Category of IV. PSI ¶¶ 33, 44. Petitioner did not file any objections to the PSI, and the Court adopted the PSI as its findings of fact. <u>See</u> PSI Add.; CR 114-068, doc. no. 75, p. 3. On April 15, 2015, Chief Judge Hall sentenced Petitioner to 137 months of imprisonment. CR 114-068, doc. nos. 46, 47.

### D. Appeal

On appeal, Petitioner challenged the sufficiency of the evidence to support his convictions, admission of his prior convictions into evidence, and the jury instruction on flight. (Doc. no. 5, Ex. A, Pet'r's App. Br.) The Eleventh Circuit affirmed the conviction. <u>United States v. McDonald</u>, 650 F. App'x 641 (11th Cir. 2016) (*per curiam*). Petitioner also petitioned the Supreme Court for a writ of certiorari, which it denied. <u>McDonald v. United States</u>, 137 S. Ct. 604 (U.S. 2016).

### E. § 2255 Motion

Petitioner timely filed the present § 2255 motion on December 4, 2017, asserting Mr. Johnson provided ineffective assistance of counsel in the following five ways:

(1)    failing to properly challenge the government's fingerprint evidence or obtain an independent fingerprint expert at trial and on appeal;

(2)    failing to challenge the police summary of his attempted escape;

(3)    failing to advise him to plead guilty;

(4)    failing to challenge admission of evidence of his past criminal record under Federal Rule of Evidence 404(b) at trial and on appeal; and

(5)     failing to file a motion to suppress the evidence found in the woods behind his house.

(<u>See generally</u> doc. nos. 1, 1-1.)

Because his failure to advise to plead guilty claim lacked the requisite detail, the Court ordered Petitioner to supplement his claim with a detailed description of counsel's actions and advice. (Doc. no. 6.) Plaintiff did so, and the government filed a supplemental response. (Doc. nos. 8, 11.) Respondent asserts all of Petitioner's claims are meritless. (Doc. nos. 5, 11.)

## II.     DISCUSSION

### A.     There is No Need for an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." <u>Winthrop-Redin v. United States</u>, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); <u>see also</u> <u>Lynn v. United States</u>, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a

claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  Because Petitioner's claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

**B.    Petitioner's Ineffective Assistance Claims Are Meritless.**

**1.    Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003).  Petitioner must show counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial.  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

### 2. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground One

Petitioner claims in Ground One counsel failed to properly investigate the fingerprint evidence and call an independent fingerprint expert to challenge the government's expert at trial and on appeal. (Doc. no. 1, pp. 3-4; doc. no. 1-1, pp. 11-18.) Petitioner asserts RCSO officers planted his fingerprints on the jars and assault rifle scope. (Doc. no. 1-1, p. 11.) Petitioner argues his counsel failed to investigate pre-trial whether the prints were planted and then challenge the government's fingerprint evidence at trial in the following ways: (1)

argue the latent prints RCSO found matched a 1999 fingerprint card rather than a more recent one; (2) argue the prints on the jars were inconsistent with the normal actions of a right-handed person like Petitioner; and (3) call an independent fingerprint analyst to testify because, according to the testimony of Lee Stencil, a Greene County expert in an unrelated case, fingerprints are hard to recover from firearms. (Id. at 11-18; doc. no. 10, pp. 4-8.) Petitioner also argues counsel was ineffective for not raising these issues on appeal. (Doc. no. 1-1, p. 18.)

"Among the duties owed by minimally competent counsel is the duty to make reasonable investigations or to make a reasonable decision that makes said investigations unnecessary." Blankenship v. Hall, 542 F.3d 1253, 1273 (11th Cir. 2008). Strategic choices made after thorough investigation are virtually unchallengeable, and strategic choices made after "less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. Counsel's investigation does not fall below Strickland's standard so long as "a reasonable lawyer could have decided, under the circumstances, not to investigate . . . particular evidence." Payne v. Allen, 539 F.3d 1297, 1316 (11th Cir. 2008). "[L]awyers do not enjoy the benefit of endless time, energy or financial resources." Rogers v. Zant, 13 F.3d 384, 387 (11th Cir. 1994). Counsel is not required to "pursue every path until it bears fruit or until all hope withers." Williams v. Head, 185 F.3d 1223, 1237 (11th Cir. 1999).

In his original motion and memorandum in support, Petitioner fails to specify what investigative steps counsel could or should have taken to substantiate his claim the fingerprint evidence was planted. In his reply brief, however, Petitioner raises the new argument Inv. Kaney has been "found to be corrupt." (Doc. no. 10, p. 6.) In support, he

cites an undated news article from news station WRDW explaining Inv. Kaney was under investigation for allegedly taking oxycodone from evidence lockers for personal use because of his addiction to painkillers. The article Petitioner attaches does not provide any dates. However, a multitude of similar news stories make clear Inv. Kaney's misconduct was not known to the Sheriff's office nor made known to the public until the last quarter of 2017, long after Defendant's trial.[1] Mr. Johnson could not have known of Inv. Kaney's misconduct at the time of trial and thus was not ineffective for failing to investigate. Furthermore, Petitioner does not allege, and the news article he cites does not suggest, Inv. Kaney was ever accused of falsifying evidence to aid in the prosecution of a defendant. Nor is there any evidence Inv. Kaney did so here. Any claim that Inv. Kaney tampered with the fingerprint evidence in Petitioner's case is speculative at best, and Petitioner has not established any promising investigation his counsel should have undertaken. Rogers, 13 F.3d at 387.

Nor were counsel's decisions regarding the fingerprint evidence at trial deficient or prejudicial. "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." See Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1995). "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (citations omitted). Ineffective assistance of counsel

---

[1]See, e.g., http://www.wrdw.com/content/news/Richmond-County-Sheriffs-Office-conducting-internal-criminal-investigation-462380433.html; http://www.wfxg.com/ story/ 37021853 / who-is-patrick-kaney-richmond-co-investigator-accused-of-stealing-narcotics; https://www.wjbf.com/news/richmond-county-sheriffs-office-conducting-internal-investigation / 1009270220; https://www.augustacourts.com/single-post /2017 / 12 / 07 / Augusta-Narcotics-Investigator-arrested-after-stealing-narcotics-from-the-division.

cannot be based on "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified." <u>Foster v. Dugger</u>, 823 F.2d 402, 406 (11th Cir. 1987). Indeed, the Eleventh Circuit has held, "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." <u>Waters</u>, 46 F.3d at 1512 (citations omitted).

First, counsel was not ineffective for failing to argue the prints were matched to a 1999 fingerprint card rather than a more recent one. Indeed, Mr. Johnson thoroughly considered this strategy, but at the pretrial conference was alerted by both the government and the Court to how the argument would open the door to more damaging evidence against Petitioner. The entire pretrial hearing exchange bears repeating.

> MS. GREENWOOD: [T]here has been a question that has arisen in our preparation for trial with regard to the fingerprints and the fingerprint card that was used to match up fingerprints and it was from the 1999 arrest and it includes a different middle name for the defendant than the one than his given middle name and so we were able to obtain a photograph from the date of his arrest on that date when those fingerprints were taken, but I have some hesitation. . . .
>
> Because [the 1999 fingerprints] are the ones that were used by the forensic -- by our fingerprint expert because those are the ones that came up in the computer when he was doing his analysis. Now he has gone to the next step and compared those fingerprints -- the 1999 fingerprints -- against the fingerprints that the marshals took just this past fall when this defendant was arrested and taken into federal custody and we plan on presenting that testimony, but to the extent that there still remains a question being presented to the jury about whether or not this August 14th of 1999 print card was actually taken from this defendant, I do have a photograph that I would like to present because circumstantial evidence can be used to prove the validity of the fingerprint card, and so I just sort of bring that up for the Court's knowledge. . . .
>
> I've got pictures of all the different times he was fingerprinted, but I do think that that would, you know, be unduly prejudicial to bring in, you know, fingerprint card after fingerprint card --

THE COURT: As do I.

MS. GREENWOOD: -- and photo after photo, but, you know, again, depending on the challenge that's made on that point, you know, obviously, the Government will need to prove that we've got the right -- we're matching the right fingerprints. So . . .

THE COURT: Is that a challenge that that's not him?

MR. JOHNSON: I regret to say that that could possibly be an issue because of the number of times this man has been arrested -- Mr. McDonald. They do a -- the AFIS search -- and they come up with a 1999 match and no other and so ---

MRS. GREENWOOD: Well, this is -- I mean, you know, and, again, I can have him explain that it comes up with the best match, but I've got, you know, four other -- three other fingerprint cards -- well, four if you include the marshal's cards -- that I can present and that my fingerprint guy has said they all belong to him and I don't have any problem presenting every single one of those to my witness as long as defense counsel doesn't object that that is somehow unduly prejudicial.

MR. JOHNSON: It is sort of a double-edged sword.

THE COURT: It is, isn't it? . . .

MRS. GREENWOOD: I do think that to the extent that he is relying on that, then I believe that bringing to say, "Here is a fingerprint card that was taken on, you know, such and such a date and here is a photograph of -- taken on that date," you know, and, I mean, I can match it all up, and my fingerprint guy can say, "Those are all the same guy who gave the fingerprint." So, you know, I don't want to do anything that is, you know, outside of the bounds of what the evidence allows -- what the evidence here rules allow, but at the same time, I mean, if that's the challenge, then I feel like I'm entitled to present evidence to overcome that challenge.

MR. JOHNSON: I understand the problem.

THE COURT: You understand the problem?

MR. JOHNSON: I do.

THE COURT: We all understand the problem. . . .

Pretrial Tr. at 13-18.

All three, two seasoned attorneys and the judge, understood the problems inherent in any attempt to challenge fingerprint evidence. Thus, Mr. Johnson's decision not to challenge it was a reasonable trial strategy decision. Adams, 709 F.2d at 1445.

Second, Petitioner's argument the fingerprint evidence contradicts the normal actions of a right-handed person is contrary to fact. At trial, Sgt. Gordon testified he found one print of Petitioner's left thumb was on the mason jar and one print of Petitioner's left thumb on the Eaton's pickle jar. Trial Tr. at 200. Reviewing the government's trial exhibit reveals each of these prints were in the middle of the jar, as if holding the jar with the left hand to unscrew the lid with the right. CR 114-068, doc. no. 37, Gov't Ex. 22; see also (doc. no. 5, p. 20). This is perfectly consistent with a right-handed person's use of the jars. Nor were the location of the left middle finger prints on the scope of the firearm inconsistent with normal handling of the rifle by a right-handed person. Trial Tr. at 199-200. Therefore, Petitioner's claim is contrary to fact and meritless.

Finally, Petitioner's claim that counsel should have called an independent fingerprint expert is meritless. In the Greene County case, Mr. Stencil testified that it is difficult to retrieve viable prints from the surface of ammunition or firearms. (Doc. no. 1-1, pp. 14-16.) Here, however, Sgt. Gordon recovered all the prints from glass jars and the glass lens of a rifle scope. Trial Tr. at 199-200. Thus, Mr. Stencil's testimony is not relevant to Petitioner's case, and Mr. Johnson was not deficient in not calling a fingerprint expert to testify in opposition to Sgt. Gordon. Waters, 46 F.3d at 1512; see also Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice.").

In sum, Mr. Johnson's trial strategy regarding Petitioner's fingerprints was neither deficient nor prejudicial to Petitioner's case. Nor was Mr. Johnson ineffective for failing to raise these fingerprint issues on appeal. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) ("[Petitioner's] appellate counsel was not ineffective for failing to raise a nonmeritorious issue."); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) ("it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance"); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

### 3. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Two

Petitioner claims in Ground Two that counsel failed to challenge the police summary of his escape. (Doc. no. 1, p. 3.) Contrary to Petitioner's contention, Mr. Johnson challenged the reasons police were in Petitioner's neighborhood and the account of his attempted escape through multiple cross-examinations of police witnesses. Trial Tr. at 100-03, 151-53. In addition, Mr. Johnson objected to a jury instruction as to flight. Pretrial Tr. at 13. Accordingly, Petitioner's claim is contrary to fact and meritless.

### 4. Petitioner Has Not Shown Entitlement to Relief Based on the Claims in Ground Three

Petitioner claims in Ground Three that counsel failed to properly advise him during plea negotiations. (Doc. no. 1, p. 4; doc. no. 7.) Petitioner confirms Mr. Johnson communicated to him a plea offer from the government "for 77 months." Petitioner claims he told Mr. Johnson he would accept this offer so long as he could retain his right to appeal the fingerprint evidence he so firmly believed to be false and planted by the police. (Doc. no. 8, Pet'r's Suppl. Stmt.) Petitioner claims he was ready to accept a plea so long as it

contained this special condition, and he recalls stating as much to Mr. Johnson during a courthouse visit on February 9 or 10, 2015. (<u>Id.</u>)

Mr. Johnson remembers no such conversation concerning Petitioner's interest in a conditional plea. Instead, he recalls Petitioner having no interest in any plea deal because of his strong belief the police "planted" the fingerprints. (Johnson Decl., doc. no. 11-1, pp. 3-4.) Mr. Johnson carefully considered Petitioner's belief and concluded there was no basis for arguing evidence tampering with respect to the fingerprints. (<u>Id.</u> at 4.) Mr. Johnson avers he was instructed to prepare for trial, which he did while "at the same time taking care to preserve the favorable plea deal that was on the table in the event that Mr. McDonald overcame his irrational insistence the that government was intent on using manufactured evidence." (<u>Id.</u>) Mr. Johnson further explains he never discussed the option of a conditional plea with Petitioner because he did not file a pretrial motion concerning the fingerprint evidence. (<u>Id.</u>) He did not file such a motion because he could not conceive of a good faith basis for such a motion. (<u>Id.</u>)

For the sake of argument, the Court will give full credit to Petitioner's claim he rejected the plea offer but instructed Mr. Johnson to counter with a conditional plea, which Mr. Johnson failed to do. Ground Three nevertheless fails because a conditional plea was unavailable to Petitioner. Pursuant to the Federal Rules of Criminal Procedure, there are three general pleas—guilty, not guilty, and (with the court's consent) nolo contendere. Fed. R. Crim. P. 11(a)(1). However, with consent of the court and government, "a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review *an adverse determination of a specified pretrial motion*." Fed. R.

Crim. P. 11(a)(2) (emphasis added). "A defendant who prevails on appeal may then withdraw the plea." Id.

Undeterred, Petitioner claims in his reply Mr. Johnson should have challenged the fingerprint evidence via pretrial motion in order to preserve the issue for a conditional plea. (Doc. no. 12, p. 3.) As discussed above, Petitioner provides no evidence apart from pure speculation that the fingerprints were planted. See supra II.B.2. Nor could Mr. Johnson have challenged the fingerprint evidence based on where and how the items were seized. See infra II.B.5. Thus, Mr. Johnson was not ineffective for failing to file a pretrial motion challenging the fingerprint evidence and preserving the issue for a conditional plea. See Winfield, 960 F.2d at 974 ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

Even if he had challenged the fingerprint evidence by pretrial motion but failed to later secure a conditional plea, courts have held such a failure is not ineffective. See Cadet v. United States, No. 111CR113WBHLTW2, 2015 WL 9659979, at *3 (N.D. Ga. Sept. 4, 2015) (internal quotations omitted) ("A conditional plea is not just the defendant's choice, so the failure to seek a conditional plea agreement cannot be charged to attorney incompetence."); Matthews v. United States, No. CR 605-030, 2008 WL 4762309, at *3 (S.D. Ga. Oct. 24, 2008) ("[B]ecause counsel is essentially powerless to effectuate a conditional plea, any alleged neglect to either advise defendant of the possibility of such a plea and or negotiate one on his behalf would not qualify as deficient performance under Strickland's first prong.") (internal quotations omitted).

In sum, Mr. Johnson's counsel was neither deficient nor prejudicial, and Petitioner is not entitled to relief on his claim in Ground Three.

### 5. Petitioner Has Not Shown Entitlement to Relief Based on the Claim in Ground Four

Petitioner claims in Ground Four that counsel "failed to conduct a challenge to the introduction of Petitioner's past record via a Fed. R. Evid. 404(b) hearing" at trial and on appeal. (Doc. no. 1, p. 6.) This claim is without merit because it is affirmatively contradicted by the record.

At the pretrial conference and throughout trial, Mr. Johnson repeatedly objected to the government's introduction of Petitioner's earlier drug convictions. Pretrial Tr. at 4-12; Trial Tr. at 144, 146-48. Moreover, on appeal, Mr. Johnson challenged the Court's admission of these convictions over his objections. (Doc. no. 5-2, Ex. B, pp. 9-12.) Therefore, because Petitioner's counsel objected multiple times at trial and on appeal to the admission of Petitioner's prior convictions under Fed. R. Evid. 404(b), Petitioner's claim of ineffective assistance is contrary to fact and meritless.

### 6. Petitioner Has Not Shown Entitlement to Relief Based on the Claims in Ground Five

Petitioner claims in Ground Five that counsel was ineffective for failing to file a motion to suppress the evidence found in the woods behind his house. (Doc. no. 1-1, pp. 7-11.) This claim is without merit because, as discussed below, any attempt by Mr. Johnson to file a motion to suppress would have been futile.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" California v. Ciraolo, 476 U.S. 207, 211 (1986) (quoting Katz v. United States, 389 U.S. 347, 360 (1967)). A party alleging an unconstitutional search "must establish both a subjective and an objective

expectation of privacy." United States v. Segura-Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as 'reasonable.'" United States v. Robinson, 62 F.3d 1325, 1328 (11th Cir. 1995) (internal quotations and alterations omitted). Under the "open field doctrine," there is no objective expectation of privacy "for activities conducted out of doors in fields, except in the area immediately surrounding the home." Oliver v. United States, 466 U.S. 170, 178 (1984).

Here, the evidence at trial showed the firearm and jars containing drugs and scales were found in a public wooded area behind several residences as the result of an open air search. Trial Tr. at 80, 91, 102-03, 112. Because the search was conducted in an open wooded area not immediately surrounding Petitioner's home, he had no objective reasonable expectation of privacy. Oliver, 466 U.S. at 178. Thus, any attempt by Mr. Johnson to suppress the evidence would have been futile and cannot serve as the basis for an ineffective assistance of counsel claim. See Winfield, 960 F.2d at 974 ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

Therefore, because trial counsel's performance was not deficient and Petitioner suffered no prejudice, Petitioner is not entitled to relief on Ground Five. Accordingly, Petitioner has not demonstrated entitlement to relief on any claim in his motion and it should be denied.

## III.    CONCLUSION

For the reasons set forth above, Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a

final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 13th day of August, 2018, at Augusta, Georgia.



BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA